UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMAINE TURNER,

          Petitioner,

v.

WILLIAM POLLARD,

          Respondent.

Case No. 13-CV-731-JPS

ORDER

The petitioner, Jermaine Turner, filed a petition for a writ of habeas corpus on June 27, 2013. (Docket #1). The Court screened that petition, allowing Mr. Turner to proceed on two claims. (Docket #6). The State of Wisconsin (hereafter "the State" or "Wisconsin") then filed an answer on the respondent's behalf. (Docket #11). Mr. Turner filed a supporting brief, to which the State responded. (Docket #12, #18). Mr. Turner has not filed a reply, so the matter is fully briefed and ready for a decision.

In reaching its decision, the Court will begin by describing the factual background of this case. Thereafter, the Court will discuss the pertinent law and its application to the specific facts of the case.

1.     BACKGROUND

In 2007, Mr. Turner allegedly attempted an armed robbery, during which he beat his victim to death. (Docket #11, Ex. 10 at 3–15; Docket #11, Ex. 11 at 20). He was charged in Milwaukee County Circuit Court with two counts stemming from that incident: (1) first degree reckless homicide as party to a crime; and (2) attempted armed robbery with use of force as party to a crime. (Docket #11, Ex. 1). Mr. Turner would eventually be convicted of those charges after a jury trial, with multiple intervening events and a subsequent appeal.

### 1.1 *Miranda/Goodchild* Hearing

Prior to trial, Mr. Turner filed a *Miranda/Goodchild* motion to suppress inculpatory statements that he had made during custodial interviews. (Docket #11, Exs. 2, 11). The State called two witnesses to that hearing: Detectives Michael Sarenac and James Hensley, who had conducted interviews of Mr. Turner. (Docket #11, Ex. 11 at 12). Mr. Turner called Dr. Suzanne Lisowski, a clinical psychologist that Mr. Turner had hired, to provide a psychological evaluation. (Docket #11, Ex. 11 at 56–58).

The detectives testified that they had advised Mr. Turner of his *Miranda* rights before interviewing him. (Docket #11, Ex. 11 at 6, 10–11, 19–20, 46, 48). They testified that Mr. Turner appeared to be typical of criminal suspects, provided appropriate answers, and did not appear confused. (Docket #11, Ex. 11 at 34, 41, 49). However, Detective Hensley did appear to provide Mr. Turner with (what would later turn out to be incorrect) guidance: Detective Hensley explained that the police believed that the victim had died from a fall, and that Mr. Turner would not be charged with a homicide if he told the truth. (Docket #11, Ex. 11 at 17, 20–21, 24–26, 29, 37–38).

Dr. Lisowski explained that Mr. Turner was low-functioning. He scored a 53 on an IQ test, indicating mild to moderate retardation, and meaning that he would have difficulty understanding what sort of rights he was waiving in speaking with the detectives. (Docket #11, Ex. 11 at 58–59, 63–64). She also testified that Mr. Turner told her that he had confessed because the detectives had a gun in the room.[1] (Docket #11, Ex. 11 at 67–68). After Dr. Lisowski asked whether Mr. Turner believed there was a deal, Mr.

---

[1] Detective Hensley testified to the contrary.

Turner indicated that he understood he could receive probation if he told the truth. (Docket #11, Ex. 12 at 15–16).

In spite of having found those limitations, Dr. Lisowski also pointed out a number of indicators that would weigh in favor of a finding that Mr. Turner understood his waiver. Specifically, she noted: that the recordings indicated that Mr. Turner understood the interview process; that Mr. Turner understood the potential for a criminal sentence and that DNA evidence may have been on his clothing; that the detectives were accommodating to Mr. Turner; and that Mr. Turner's apology to a victim's family appeared to genuinely come from Mr. Turner. (Docket #11, Ex. 11 at 66–67; Docket #11, Ex. 12 at 8–9, 17).

After receiving all of this testimony, the circuit court decided that the detectives had given Mr. Turner his *Miranda* warning and that Mr. Turner had knowingly waived his *Miranda* rights during the interviews. (Docket #11, Ex. 13 at 3–4). The circuit court determined that Turner "understood and gave appropriate responses to the questions that were being asked of him," and that his statements were voluntary. (Docket #11, Ex. 13 at 4).

Accordingly, the circuit court denied Mr. Turner's *Miranda/Goodchild* motion to suppress. (Docket #11, Ex. 13 at 4).

1.2    Motion for Mistrial Based Upon Jury Conduct

Mr. Turner then proceeded to trial. During the trial, the sole African-American juror expressed some concerns she had with the behavior of other jurors, so the circuit court decided to conduct a *voir dire* examination of her. (*See* Docket #11, Ex. 21 at 66). Specifically, that juror stated that other jurors had made jokes about witnesses, "how they were dressed, showing their backside, or making comments that how many kids a person had and/or how many people lived in the house." (Docket #11, Ex. 21 at 69–70). She also

indicated that she felt uncomfortable as the only African-American juror, because she felt that other jurors did not talk to her. (Docket #11, Ex. 21 at 66). Nonetheless, the juror indicated that the other jurors had not discussed witness credibility, the presumption of innocence, or any specific evidence. (Docket #11, Ex. 21 at 71–72).

With that, the circuit court indicated that it would finish trial shortly and instruct the jurors to be respectful. (Docket #11, Ex. 21 at 72–73). The juror did not request any additional action, and counsel for both parties said "Yes" when asked whether the circuit court's approach was sufficient. (Docket #11, Ex. 21 at 77–79).

The next day, however, Mr. Turner's attorney moved for a mistrial. (Docket #11, Ex. 22 at 7). Mr. Turner's counsel argued that the jurors' remarks had "an air of African-American type teasing." (Docket #11, Ex. 22 at 7).

The circuit court refused to grant a mistrial. (Docket #11, Ex. 22 at 10). It found that, even if true, the jurors' comments would not have warranted that relief:

> There's a couple of things that I want to mention, and I think I did yesterday also. First of all, at least one of the witnesses that supposedly the jurors were making fun of was the State's star witness[, Tiffany Schumpert]. So it really has very little to do with the defense.
>
> Second of all, the victim in this case is African-American also. So it's not an issue of a black versus white set of circumstances. I think I would be more concerned if there were other race-related issues that were set forth in this case or that the jurors were making fun only of the defendant's witnesses.
>
> And that's assuming that that actually happened in the way it did. I'm not saying that she made it up, but there may be a misperception about what was said. As I said yesterday, we would certainly prefer that jurors not discuss any part of the

case. But it's not as though they discussed credibility. It's not as though they discussed the specifics of the testimony.

And even though in a perfect world it would be best if they didn't talk about anything, I can't really let four days' worth of work go by without—and kick this case loose and mistry this case for no real reason. The reasons for the mistrial are just really not there.

(Docket #11, Ex. 22 at 8–9).

### 1.3 Rejection of *Denny* Evidence

Mr. Turner also requested the ability to introduce potentially-exculpatory evidence pursuant to *State v. Denny*, 120 Wis. 2d 614, 624, 357 N.W.2d 12 (Ct. App. 1984). That evidence related to an alleged jealous lover. (*See* Docket #11, Ex. 5 at 19; Docket #11, Ex. 7 at 3).

The circuit court rejected Mr. Turner's request as "absolutely ridiculous," calling it a "fishing expedition." (Docket #11, Ex. 18 at 80).

### 1.4 Jury Verdict and Sentencing

Having dealt with these motions, the remainder of the trial continued on without incident.

Ultimately, the jury convicted Mr. Turner on both counts. (*See* Docket #11, Ex. 1). The circuit court then sentenced Mr. Turner to 25 years confinement and 10 years of extended supervision. (Docket #11, Ex. 1).

### 1.5 Appeal of Conviction

Mr. Turner appealed his conviction to the Wisconsin Court of Appeals ("the court of appeals"). On appeal, Mr. Turner made three arguments in favor of reversal. First, he argued that the circuit court erred in denying his *Miranda/Goodchild* motions to suppress his inculpatory statements. (Docket #11, Ex. 4 at 13–16). Second, he asserted that the circuit court erred when it did not interview all of the jurors about the alleged negative comments.

(Docket #11, Ex. 4 at 16–20). Third, he alleged that he should have been allowed to offer the supposedly-exculpatory *Denny* evidence. (Docket #11, Ex. 4 at 12–13).

The court of appeals rejected those arguments in full.[2] (Docket #11, Ex. 7 at 1–3). Mr. Turner requested review by the Wisconsin Supreme Court, which denied that request. (Docket #11, Exs. 8, 9).

2. DISCUSSION

Mr. Turner is entitled to habeas relief only if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court begins by describing the standard that it must employ in determining whether Mr. Turner, in fact, is entitled to habeas relief. It then turns to the substance of his claims.

2.1 Standard of Review

Because the state courts adjudicated Mr. Turner's claims on their merits, the Court may grant a writ of habeas corpus only if the state court's decision was: (1) "contrary to…clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2). *See also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)).

---

[2] The court of appeals went into greater detail. However, because the court of appeals' discussion relates directly to the Court's substantive analysis of Mr. Turner's claims, the Court will wait to recount that discussion until it reaches the analysis portion of this order. *See* Section 2.2, *infra*.

"A state court decision is contrary to clearly established federal law if the court applies a rule that plainly contradicts the Supreme Court's governing rule or if it comes to a result different than did the Supreme Court on substantially identical facts." *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). *See also Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams*, 529 U.S. at 405–06; *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013)).

"A decision involves an 'unreasonable application' of Supreme Court precedent if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013) (citing *Williams*, 529 U.S. at 407). However, the Supreme Court has made clear that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. In fact, Mr. Turner will be entitled to habeas relief only if he can "show that the state court's ruling on the claim…was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526 U.S. 86, 131 S.Ct. 770, 786–87 (2011). *See also Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013).

"A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010); citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)).

2.2 Substantive Analysis

With that standard of review in place, the Court now addresses Mr. Turner's claims for relief.

### 2.2.1 *Miranda/Goodchild*

Mr. Turner's first claim for relief is based upon his *Miranda/Goodchild* motion to suppress his inculpatory statements. He again reiterates—as he did before the court of appeals—his argument that he lacked the mental capacity to waive his *Miranda* rights.

"When a *Miranda* waiver is challenged, two distinct questions are presented: whether the waiver was voluntary, knowing, and intelligent as a matter of fact, and whether it was involuntary as a matter of law." *Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996). The historical components—such as the actual waiver or the defendant's intellect or understanding—are factual matters, entitled to a presumption of correctness that the Court should reverse only in the case it involves an unreasonable determination of the fact. *See Jackson v. Frank*, 348 F.3d 658, 663 (7th Cir. 2003) (citing *Henderson*, 97 F.3d at 946).

> Whether a petitioner actually waived his *Miranda* rights and whether he did so freely, *knowingly, and intelligently*, are fact-dependent issues that the state courts are best situated to resolve. *Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217, 219 (7th Cir. 1984); *Perri v. Director, Dep't of Corrections*, 817 F.2d 448, 451 (7th Cir. 1987). Frequently, for example, the state and the petitioner offer conflicting testimony as to whether the petitioner was apprised of and willingly relinquished his rights; assessing the *Miranda* waiver thus demands credibility assessments that typically only the trier of fact can make. *Bryan*, 820 F.2d at 219; *see also Weidner v. Thieret*, 866 F.2d 958, 961 (7th Cir. 1989). That state court's historical findings as to the petitioner's knowledge, understanding, and determination to forgo his *Miranda* rights are, consequently, entitled to a

> presumption of correctness under 28 U.S.C. §§ 2254(e)(1) (1996), formerly § 2254(d)…*E.g.*, *Jones v. Page*, 76 F.3d 831, 852 (7th Cir. 1996); *Bryan*, 820 F.2d at 219–20.

*Henderson*, 97 F.3d at 946 (emphasis added; citations to cert denials omitted). But, even if the Court finds that the facts establish a voluntary, knowing, and intelligent waiver, the Court may still ultimately find that—*as a matter of law*—the waiver was involuntary. *Baskin v. Clark*, 956 F.2d 142, 145 (7th Cir. 1992). "Thus, whether the petitioner's statement was the product of fundamentally fair procedures, untainted by any type of coercion," remains a legal question. *Henderson*, 97 F.3d at 947 (citing *Weidner*, 866 F.2d at 961; *Bryan*, 820 F.2d at 219, 220; *United States v. Betts*, 16 F.3d 748, 763 n.10 (7th Cir. 1994)).

So, there are really two separate issues for review that may be before the Court, here. First, whether, *as a matter of fact*, the state courts erred in finding that Mr. Turner's waiver was voluntary, knowing, and intelligent, in light of his intellectual capacity. Second, whether, *as a matter of law*, his waiver and statement were the "product of fundamentally fair procedures," in satisfaction of the due process requirements.

The first of those questions is what is primarily at issue, here, and there is no reason for the Court to overturn the state court decision. The court of appeals' decision on the issue did not involve an unreasonable application of the facts. It found:

> The circuit court's decision addresses mainly voluntariness, that is, whether the statements were coerced. However, the court also concluded that Turner voluntarily waived his Miranda rights. In reaching that conclusion, the court noted that Turner's own expert stated, based on her interviews with him, that Turner had a basic understanding of the rights that were given. Whether Turner had the intellectual ability to understand the rights is a question of historical fact on which

> we will accept the trial court's finding unless it is clearly erroneous. *State v. Hambly*, 2008 WI 10, ¶ 92, 307 Wis. 2d 98, 745 N.W.2d 48 (historical facts reviewed using "clearly erroneous" test). In light of the expert's testimony, the finding was not clearly erroneous.

(Docket #11, Ex. 7 at 2). The court of appeals was correct: Mr. Turner's own expert offered testimony that weighed against finding that he lacked the mental capacity to waived his rights. (*See* Docket #11, Ex. 11 at 66–67; Docket #11, Ex. 12 at 8–9, 17). Perhaps there was evidence before the circuit court or court of appeals[3] that weighed in the opposite direction, but that does not mean that there was an unreasonable determination of the facts or that the facts, as determined, were against the clear and convincing weight of the evidence. Accordingly, the Court cannot find that the state erred in its factual finding that Mr. Turner's waiver and statements were voluntary, knowing, and intelligent.

The question of whether there was *legal* error is another question. But, as the State correctly points out, Mr. Turner never raised this question before the state courts, and so procedurally defaulted it because the state courts never had a fair opportunity to act on the claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–845 (1999). The court of appeals addressed only the mental limitation issue discussed above, never reaching any issue regarding the legal fairness of the circumstances surrounding Mr. Turner's waiver and statements (*See* Docket #11, Ex. 7); Mr. Turner's briefs to the court of appeals focused entirely on his mental limitations (*See* Docket #11, Ex. 4 at 7–8; Docket #11, Ex. 6), as did his petition for review to the Wisconsin Supreme

---

[3]The court of appeals received a very limited record on this issue, though: "It is not clear whether Turner made this argument to the circuit court, because the record does not appear to contain a suppression motion or brief from Turner, nor a transcript of any oral argument." (Docket #11, Ex. 7 at 2).

Court (Docket #11, Ex. 8 at 6–8); moreover, Mr. Turner did not include his suppression motion and related materials with his appeal, making the court of appeals' review of that motion all the more difficult (Docket #11, Ex. 7 at 2). For all of these reasons, the Court is obliged to conclude that Mr. Turner did not present this argument to the court of appeals. He, therefore, procedurally defaulted it, depriving the Court of review.

In any event, even if the Court were to review the substance of this argument, the Court would still conclude that Mr. Turner's confession was voluntary and the product of fundamentally fair procedures, as a matter of law. To determine whether Mr. Turner's confession was legally proper, the Court must consider "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). *See also Withrow v. Williams*, 507 U.S. 680, 693–94 (1993); *Duckworth v. Eagan*, 492 U.S. 195 (1989); *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Generally, to find an involuntary confession, the Court looks for (1) police coercion or overreaching, which (2) overbear's the accused's will, thus (3) causing the confession. *Connelly*, 479 U.S. at 165–167.

Here, there is conflicting evidence in the record. In favor of coercion is the potentially-misleading statement from Detective Hensley explaining that the police believed that the victim had died from a fall, and that Mr. Turner would not be charged with a homicide if he told the truth (Docket #11, Ex. 11 at 17, 20–21, 24–26, 29, 37–38); that turned out to be false—though the record does not indicate that the detectives were lying to coerce a confession. Likewise, Mr. Turner's low IQ score and (unverified) belief that there was a gun in the room both favor a finding of coercion. (Docket #11, Ex. 11 at 58–59, 63–64, 67–68). On the other side of the ledger are: (1) the

detectives' beliefs that Mr. Turner was a typical interviewee—a belief that was apparently corroborated by the recordings of the interview; (2) Mr. Turner's apology to the victim's family; (3) the expert's acknowledgment that Mr. Turner understood the interview process and other important information—again corroborated by the recordings; and (4) the officers' accommodations for Mr. Turner, including regular breaks and snacks. (Docket #11, Ex. 11 at 31, 41, 49, 66–67; Docket #11, Ex. 12 at 8–9, 17). In the Court's opinion, the evidence weighs in favor of a finding that there was not coercion or overreaching; the totality of the circumstances establishes that the waiver and statements were taken in a legally proper manner.

Accordingly, because the legal issues regarding Mr. Turner's waiver and statements were defaulted (and, even if he did not default, he could not prevail on them), the Court must deny his request for relief on that basis.

### 2.2.2 Mistrial

Mr. Turner claims that the court of appeals erred in rejecting his argument that the circuit court should have interviewed every witness in determining whether to grant a mistrial.

This claim does not entitle him to habeas relief, because the court of appeals rejected the argument on an adequate and independent state procedural ground. The court of appeals stated:

> Turner next argues that the court erred by not interviewing jurors for potential bias when certain information was brought to its attention. We consider this argument forfeited due to the lack of contemporaneous objection. *See State v. Huebner*, 2000 WI 59, ¶¶ 10–11, 235 Wis. 2d 486, 611 N.W.2d 727. Turner does not dispute that he did not ask the court to conduct voir dire of other jurors. None of the case law he cites requires the court to conduct such an inquiry on its own initiative.

(Docket #11, Ex. 7 at 2–3). Wisconsin's contemporaneous objection rule provides that the court of appeals will not consider issues that a party did not raise before the trial court. *See, e.g.*, *State v. Huebner*, 2000 WI 59, ¶¶ 10-11, 235 Wis. 2d 486, 611 N.W.2d 727; *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). And, certainly, Mr. Turner failed to raise his request for interviews of all the witnesses before the circuit court. (*See* Docket #11, Ex. 21 at 78–79; Docket #11, Ex. 22 at 7). Moreover, the contemporaneous objection rule is an adequate and independent state ground precluding habeas relief. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977); *Ford v. Israel*, 534 F. Supp. 1128, 1138 (W.D. Wis. 1982), *aff'd*, 701 F.2d 689 (7th Cir. 1983); *Dressler v. McCaughtry*, 238 F.3d 908, 912-13 (7th Cir. 2001).

Furthermore, there is no basis to excuse Mr. Turner's failure to raise the claim. He certainly has not shown cause for the failure. Nor has he shown prejudice or a miscarriage of justice. Indeed, the origin of the argument—one juror's complaints about her own treatment by other jurors and statements about witnesses—seems to indicate that, if anything, the negative comments about witnesses (even if based on race, which the circuit court did not fully credit) would have negatively impacted *the prosecution*.

However, even if the Court could address this argument on its merits, it would still reject the argument. There is no federal law to which the court of appeals' decision is contrary or which was applied unreasonably. Aside from the fact that the circumstances did not really indicate jury bias, there is no law that requires circuit courts to *sua sponte* question witnesses who *may be* biased. As the State points out:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and

> protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

(Docket #18 at 23–24 (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982))). The circuit court certainly complied with those directives: it carried out *voir dire* and, upon there being an indication of potential bias, questioned the related juror. Failure to go further, without any prompting of the parties and without any indication that there were any true bias issues, was not a violation of due process.

Mr. Turner defaulted this issue and, even if he did not, he would not be entitled to relief on it. Accordingly, the Court must deny habeas relief on this issue.

### 2.2.3 *Denny* Evidence

Mr. Turner's last claim for relief concerns the denial of his ability to present *Denny* evidence. Again, this claim fails for both procedural and substantive reasons.

Procedurally, it fails because Mr. Turner did not present this claim in his original petition. (*See* Docket #1; Docket #6 at 3 (identifying only Mr. Turner's first two claims)). The State is correct that failure to raise a claim in an initial petition cannot be rectified by raising those claims in a later brief. (Docket #18 at 27 (citing *Lukas v. Hompe*, No. 08-CV-429, 2009 WL 210688, at *1 (W.D. Wis. Jan. 28, 2009); *Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009); *U.S. ex rel. Lash v. Cooper*, 952 F. Supp. 1245, 1253 (N.D. Ill. 1996))). So, Mr. Turner's *Denny* claim fails on that basis.

In any event, substantively, the *Denny* claim is without merit. The court of appeals discussed the *Denny* issue as follows:

> Finally, Turner argues that the circuit court erred by denying his motion to admit evidence that a third party may have committed the crime. The issue is whether the proposed evidence satisfied the "legitimate tendency" test of *State v. Denny*, 120 Wis.2d 614, 624, 357 N.W.2d 12 (Ct. App. 1984) (as long as motive and opportunity have been shown and as long as there is also some evidence to directly connect a third person to the crime charged which is not remote in time, place or circumstances, the evidence should be admissible).
>
> Turner argues that he sought to introduce evidence that the victim was having an extramarital affair with a certain person, and that this person had a motive of jealousy. However, as the State points out, Turner's request to admit this evidence contained no evidence that the person was indeed jealous. Turner also does not clearly explain what opportunity the person had to commit the crime. We conclude that the request to admit this evidence was properly denied.

(Docket #11, Ex. 7 at 3). While the court of appeals did not mention any federal authority in making that determination, *Denny* is based upon *Alexander v. United States*, 138 U.S. 353 (1891), and the Court must presume adjudication on the merits, *Johnson v. Williams*, --- U.S. ----, 133 S. Ct. 1088, 1096 (2013). And, applying AEDPA deference, the court of appeals' determination does not form the basis for relief. There was ample evidence that Mr. Turner's claim was far outside of the grounds of rationality (Docket #11, Ex. 18 at 8; Docket #11, Ex. 5 at 17–19). So, the court of appeals' decision reasonably determined the facts, did not involve an unreasonable application of federal law, and was not contrary to federal law.

For these reasons, the Court is obliged to deny habeas relief on Mr. Turner's *Denny*.

3. CONCLUSION

Having concluded that none of Mr. Turner's claims form the basis for habeas relief, the Court is obliged to deny Mr. Turner's habeas petition.

Finally, under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Mr. Turner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should be issued, additional arguments are not necessary here. As the Court discussed extensively, above, reasonable jurists would not debate whether the petition should have been resolved in a different manner. No reasonable jurist would find it debatable that Mr. Turner's petition fails to make any showing—let alone a substantial showing—of a violation of a constitutional right. As a consequence, the court must deny a certificate of appealability as to the petitioner's petition.

Accordingly,

IT IS ORDERED that the petitioner's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to the petitioner's petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2014.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge